# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| TAMBERLY ANN D., | Case No. 1:24-CV-00398-REP |
| Plaintiff, | |
| vs. | **MEMORANDUM DECISION AND ORDER** |
| FRANK BISIGNANO, Commissioner of Social Security, | |
| Defendant. | |

Pending is Petitioner Tamberly Ann D.'s Petition for Review (Dkt. 1) and an accompanying Brief in Support of Petition to Review (Dkt. 15) appealing the Social Security Administration's final decision finding her not disabled and denying her claim for disability insurance benefits. *See* Pet. for Rev. (Dkt. 1). This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## ADMINISTRATIVE PROCEEDINGS

Petitioner is a fifty-three-year-old woman who alleges that she is disabled as a result of back, neck, and shoulder pain. AR 23, 48. On April 10, 2021, Petitioner filed an application for social security disability income ("SSDI") alleging a disability onset date of December 22, 2019. AR 21. The claim was denied initially and on reconsideration and Petitioner requested a hearing in front of an Administrative Law Judge ("ALJ"). *Id.* On May 25, 2023, the claim went to a hearing before ALJ Thomas Sanzi. *Id.* At the disability hearing, Petitioner amended her alleged

**MEMORANDUM DECISION AND ORDER - 1**

disability onset date to October 13, 2021, shortly before her fiftieth birthday.  AR 21.  On August

28, 2023, the ALJ issued a decision that was unfavorable to Petitioner.  AR 21-34.

Petitioner appealed this decision to the Appeals Council.  The Council denied Petitioner's

request for review, making the ALJ's decision the final decision of the Commissioner of Social

Security.  AR 1-6.

Having exhausted her administrative remedies, Petitioner filed this case.  Petitioner raises

three points of error.  First, Petitioner contends that the ALJ failed to provide clear and

convincing reasons for rejecting her subjective symptom testimony.  Pt.'s Br. at 6-15 (Dkt. 15).

Second, Petitioner argues that the ALJ failed to provide adequate reasons for rejecting the lay

statement of her daughter.  *Id.* at 15-16.  Finally, Petitioner maintains that the ALJ inadequately

evaluated the effects of Petitioner's degenerative disc disease of the cervical spine on her ability

to handle or finger.  *Id.* at 16-18.

## STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence

and based on proper legal standards.  42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th

Cir. 2017).  Findings as to any question of fact, if supported by substantial evidence, are

conclusive.  42 U.S.C. § 405(g).  In other words, if there is substantial evidence to support the

ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *See*

*Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v.*

*Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The standard requires more than a scintilla but less

**MEMORANDUM DECISION AND ORDER - 2**

than a preponderance. *Trevizo*, 871 F.3d at 674. It "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a person of a reasonable mind to accept the conclusions of the ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098. Considerable weight is given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## THE SEQUENTIAL PROCESS

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

**MEMORANDUM DECISION AND ORDER - 3**

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant is engaged in SGA, disability benefits are denied regardless of her medical condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522, 416.922. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are

**MEMORANDUM DECISION AND ORDER - 4**

awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal a listed impairment, the claim cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e).

In the fourth step of the evaluation process, the ALJ decides whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. An individual's past relevant work is work she performed within the last 15 years, or 15 years prior to the date that disability must be established, if the work was substantial gainful activity and lasted long enough for the claimant to learn to do the job. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin,* 759 F.3d 995, 1011 (9th Cir. 2014). If the claimant can do such other work, she is not disabled; if the claimant cannot do other work and meets the duration requirement, she is disabled.

## THE ALJ'S FINDINGS

The ALJ found that Petitioner suffers from the following severe impairments: degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, degenerative joint disease of the right shoulder, and obesity. AR 23. The ALJ determined that these impairments limit Petitioner's ability to engage in work-related activities in a variety of

manners, including that Petitioner can only occasionally reach overhead and only occasionally

stoop.  AR 27.  Based on the testimony of a vocational expert (a "VE"), the ALJ concluded that

these limitations would not prevent Petitioner from returning to her past work as a timekeeper.

AR 32.  The ALJ also found that Petitioner could perform other work, including as a

cleaner/housekeeper, marker, and routing clerk.  AR 33.  The ALJ, therefore, found that

Petitioner was not disabled.  AR 33-34.

## DISCUSSION

I.  Petitioner's Subjective Symptom Testimony

Petitioner's first challenge on appeal relates to her subjective symptom testimony.

According to Petitioner, she cannot work because her chronic neck, back, and shoulder pain

severely limit her activity level.  AR 216, 245.  At the disability hearing, for example, Petitioner

testified that she could only walk 15-20 minutes before needing to rest, could only stand for 10

minutes before needing to change position, and could only sit for 15 minutes before she starts

shifting from pain and needs to take a break.  AR 67-68.  Petitioner also noted that the

compression of her cervical spine causes her hands to go to sleep, which makes her drop things.

AR 60, 63.

When evaluating the reliability of such testimony, the ALJ engages in a two-step

analysis.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  "First, the ALJ must

determine whether the claimant has presented objective medical evidence of an underlying

impairment 'which could reasonably be expected to produce the pain or other symptoms

alleged.'"  *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991).  Second,

if such objective medical evidence exists, and the ALJ has not determined that the claimant is

**MEMORANDUM DECISION AND ORDER - 6**

malingering, the ALJ must provide clear and convincing reasons before rejecting the claimant's testimony regarding the severity of the claimant's symptoms.  *Id.*

Generalized findings will not satisfy this standard.  The reasons an ALJ provides for rejecting a claimant's symptom testimony "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony . . .."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell*, 947 F.2d at 345-46).  In other words, "the 'clear and convincing' standard requires an ALJ to show his work."  *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

On appeal, the district court's role is to review, not redo, this work.  If the ALJ's rationale for rejecting a petitioner's testimony is "clear enough that it has the power to convince," the Court must affirm whether the Court is personally persuaded by the analysis or not.  *Smartt*, 53 F.4th at 499.

Here, the ALJ acknowledged that Petitioner has exertional limitations due to pain, but found that she could walk, stand, sit, handle, and engage in daily activity with more facility than she claimed.  AR 28-29.  The ALJ provided a range of overlapping reasons for this conclusion, including Petitioner's "conservative" treatment history, her positive response to trigger point injections, her activities of daily living, and the absence of any connection between her medical conditions and her decision to stop working or her alleged disability onset date.  AR 29-30.  Petitioner raises several challenges to this reasoning.  None are availing.

a.    *Any error in the ALJ's framing of the credibility analysis was harmless.*

One of the primary critiques that Petitioner raises to the ALJ's adverse credibility finding is that the ALJ put the "cart before the horse" when he compared Petitioner's treatment history to

**MEMORANDUM DECISION AND ORDER - 7**

the RFC rather than to her testimony.  Pt.'s Br. at 6-7 (Dkt. 15) and Pt.'s Rply. At 1-3 (Dkt. 20).

To support this argument, Petitioner cites to *Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir.

2017).  *Laborin* involved a challenge to boilerplate that ALJs were previously using to introduce

their credibility findings.  This boilerplate stated that the ALJ was discrediting the claimant's

testimony "to the extent" it was inconsistent with the RFC.  *Id.* at 1152-1153.  The Ninth Circuit

found that this boilerplate "encourage[d] an inaccurate assessment of a claimant's credibility,"

by "invert[ing] the responsibility of an ALJ," to "first to determine the medical impairments of a

claimant based on the record and the claimant's credible symptom testimony and only *then* to

determine the claimant's RFC."  *Id.* at 1152-1154.

Here, the ALJ did not use the boilerplate that *Laborin* disapproved.  To the extent the

ALJ's references to the RFC and "light work" violated the spirit of *Laborin*, as Petitioner argues,

this is not a stand-alone basis for reversal.

The inclusion of "flawed" language rejecting a claimant's testimony as inconsistent with

the RFC in an ALJ's decision "is not, by itself, reversible error and can be harmless."  *Id.* at

1154.  If an ALJ errs under *Laborin*, the ALJ's decision will still be upheld so long as the ALJ

has provided clear and convincing reasons for rejecting the claimant's testimony elsewhere in the

decision.  *Id.*  For the reasons set forth below, the ALJ's decision satisfies this standard.

b.    *The ALJ's credibility analysis has the power to convince.*

The ALJ provided the following, individualized reasons for rejecting Petitioner's

testimony about the limiting effect of her neck, back, and shoulder conditions.

- The claimant never underwent surgical intervention for these conditions.  Her
  treatment "was limited to non-opioid medication management, trigger point
  injections, corticosteroid injections, and physical therapy," which the ALJ
  characterized as "conservative."[1] AR 29-30.

[1] Petitioner appears to have overlooked this part of the ALJ's decision because it is included within the
ALJ's discussion of the prior administrative medical findings.  *See* AR 30 ("As discussed above, the

**MEMORANDUM DECISION AND ORDER - 8**

- During the period of alleged disability, the claimant had a thirteen-month gap in her pain management care, which she attributed to having redirected her focus to her parents' medical problems.  AR 29, 72.

- The record showed that Petitioner received substantial pain relief from various treatments, including trigger point injections and radiofrequency ablation, and that she was managing sufficiently with gabapentin and meloxicam.  AR 29.

- Despite her pain, Petitioner was able to "prepare simple meals, do laundry, wash dishes, provide care for her grandchildren, water the horses, drive, and shop in stores."  She was also able to brush horses and ride a four-wheeler in November 2022, which the ALJ viewed as inconsistent with her claims of disabling spine and joint pain.  AR 29.

- Petitioner stopped working due to moving to another state rather than any impairment, and her amended alleged onset date did not coincide with any documented worsening of her conditions.  AR 29.

Petitioner takes issue with each of these findings, based on her own competing view of the record.  For example, Petitioner stresses that her pain treatments only provided her partial and temporary relief.  Pt.'s Br. at 10-11 (Dkt. 15).  Petitioner also points out that she received help caring for her animals, only watched her toddler-aged grandchildren some of the time, and testified that she only rode a four-wheeler once to deal with an emergency situation with some run-away cows.[2]  *Id.* at 11-13.

---

claimant's treatment was conservative.").  The Court, however, must assess the reasonableness of the ALJ's findings in the context of the decision as a whole.  *See Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022) (a district court "clearly erred" when it failed to consider "all the pages of the ALJ's decision"); *see also Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001) (while an ALJ is required to discuss and evaluate evidence that supports his conclusions, he is not required to do so under any specific heading).

[2] Petitioner also cites to a medical opinion from one of her treating providers.  Pt.'s Br. at 14 (Dkt. 15).  As Petitioner acknowledges, this opinion was not presented to the ALJ.  It was submitted for the first time to the Appeals Council.  Critically, the Appeals Council refused to exhibit the opinion because it found that there was not "a reasonable probability that [the opinion] would change the outcome of the decision." AR 2.  Petitioner does not challenge this finding.  Pt.'s Br. at 14 (Dkt. 15).  She asks, however, that the Court consider the opinion "in context of the overall case." *Id.* at 14.  The Court is not persuaded that such consideration is appropriate.  The administrative record on appeal "includes evidence submitted to and *considered* by the Appeals Council" as well as evidence that was submitted to, but wrongly rejected

**MEMORANDUM DECISION AND ORDER - 9**

A different ALJ may have found these arguments (and Petitioner's various other points) persuasive. But that is not a basis for reversal. *See Jones v. Berryhill*, 720 F. App'x 851, 852 (9th Cir. 2017) (unpublished) (where an ALJ's credibility findings rest "upon a reasonable interpretation of the record," the court may not usurp these findings with on its own reweighing of the record). To survive review, an ALJ's rejection of a claimant's subjective symptom testimony need not be perfectly unassailable, or even persuasive to the reviewing court, it only needs to be supported by substantial evidence and be specific and clear enough to have the "power to convince." *Smartt*, 53 F.4th at 499.

Whatever quibbles may be raised with the ALJ's reasons, they form a clear and convincing reason, taken as a whole, for the ALJ to have rejected Petitioner's symptom testimony. First, the ALJ reviewed Petitioner's treatment record and found that Petitioner had obtained significant, albeit not full or permanent, pain relief from several treatment modalities. AR 29. This was not an irrational or unsupported conclusion. During the period of alleged disability, Petitioner told her pain management provider that she was "managing sufficiently

---

by the Appeals Council. *Brewes v. Comm'r of SSA*, 682 F.3d 1157, 1162 (9th Cir. 2012) (emphasis added). Here, the Appeals Council declined to exhibit the opinion from Dr. Orme. AR 2. And, Petitioner makes no effort to challenge that finding. It is not clear that such evidence becomes parts of the record on appeal. *See Bales v. Berryhill*, 688 F. App'x. 495, 496 (9th Cir. 2017) (unpublished) (where the Appeals Council found that the new medical records did not "relate to the period on or before the date of the administrative law judge hearing decision," and did not, therefore consider these records, the records did not become part of the administrative record). Even if it does, where an Appeals Council improperly refuses to consider evidence, the proper course is generally to "remand to the ALJ . . . so that the ALJ can reconsider its decision in light of the additional evidence," not for the Court to make its own post hoc credibility findings about whether the evidence does nor does not support a petitioner's testimony. *See Taylor v. Comm'r of SSA*, 659 F.3d 1228, 1233 (9th Cir. 2011). Because the law in this area is murky, however, the Court has read and reviewed Dr. Orme's report. Petitioner is correct that Dr. Orme's opinion aligns with Petitioner's claims about her ability to sit, stand/walk, and handle. As with many of Petitioner's arguments, however, that is not a basis for the Court to reverse the ALJ's credibility findings. The role of the Court in reviewing the Social Security Commissioner's decisions is "a limited one." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The question on appeal is not whether substantial evidence exists to support the claimant's preferred findings, but whether substantial evidence supports the ALJ's findings. *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997). Dr. Orme's report has minimal bearing on this question.

**MEMORANDUM DECISION AND ORDER - 10**

with gabapentin and meloxicam." AR 29 (citing AR 617) and AR 617 (rating her pain as 5-6/10 without medication, but explaining that it was reduced to 3/10 with medication). She also reported experiencing substantial relief from trigger point injections and radiofrequency ablation. AR 617, AR 551 (reporting that an ablation from August of 2020 was starting to wear off in March of 2021); AR 555 (reporting 80% pain improvement in the affected area from a medial branch block for lower back pain); AR 565 (reporting 95% pain relief in her muscles from a trigger point injection). While this relief was not absolute or permanent, this is not a case where the ALJ refused to accept that the claimant had chronic pain. The ALJ accepted that Petitioner's conditions were severe and that they significantly limited her activity level. In other words, the ALJ agreed that Petitioner experiences serious, ongoing, and restricting back, neck, and shoulder pain.

In assessing Petitioner's credibility, therefore, the ALJ was not focused on whether Petitioner had back pain, but on how severe this pain was and whether this pain prevented Petitioner from sustaining any position for more than 15-20 minutes or from engaging in any full-time work as she claimed. It is the reasonableness of these findings that the Court must review on appeal. *See Mullis v. Astrue*, No. CV 11-0542 JPR, 2012 U.S. Dist. LEXIS 2746, 2012 WL 71708, at *6 (C.D. Cal. Jan. 10, 2012) ("the existence of some pain does not constitute a disability if it does not prevent Plaintiff from working") (citing *Thorne v. Schweiker*, 694 F.2d 170, 171 (8th Cir. 1982)); *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (the social security program is "intended to provide benefits to people who are unable to work; awarding benefits in cases of nondisabling pain would expand the class of recipients far beyond that contemplated by the statute.").

**MEMORANDUM DECISION AND ORDER - 11**

The ALJ reasonably considered the pain relief Petitioner reported receiving when assessing the credibility of her testimony.  The ALJ also reasonably considered the significant gap in Petitioner's pain management care.  Specifically, it is undisputed that Petitioner stopped seeking more aggressive forms of pain relief, such as injections or ablations, for roughly thirteen months during the period of alleged disability.  AR 29 and AR 1272 (returning for a follow-up after a year of receiving no treatment except her normal oral medications).  Petitioner attributes this gap to her need to help her parents with their health issues.  AR 29, 72.  This explanation, however, does not make the gap in treatment irrelevant.  Petitioner's decision to prioritize her parent's care over her own pain treatment is a rational factor for an ALJ to consider in determining the level and limiting impact of Petitioner's pain.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (in assessing a claimant's credibility, and ALJ may consider "an unexplained or *inadequately* explained failure to seek treatment or to follow a prescribed course of treatment") (emphasis added).  This is especially true given the length of the treatment gap at issue.  For somewhere close to a year, Petitioner elected to delay her own pain management treatment to focus on and assist with other family member's, admittedly serious, medical problems.  While the Court and Petitioner may have drawn different conclusions from this evidence than the ALJ, that does not make the ALJ's findings unreasonable or unsupported.

As outlined above, Petitioner averred that she was in constant pain that was so bad she could not sit, stand, or walk for more than 15-20 minutes without changing position.  AR 67-68, 216, 245.  A reasonable jurist could find that this testimony did not align (i) with the level of pain relief Petitioner reported receiving from treatment or (ii) with the significant gap in Petitioner's pain management care, during which Petitioner was able to focus on other family member's medical care.

**MEMORANDUM DECISION AND ORDER - 12**

Second, the ALJ's findings about Petitioner's reported activities were also reasonable. Where a claimant's reported activities conflict with the claimant's description of the severity of her pain-related limitations, that is a clear and convincing reason for discounting a claimant's assertion of disability. *See Bray v. Comm'r of Social Sec.*, 554 F.3d 1219, 1227 (9th Cir. 2009) ("In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors."); *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination."). In this case, Petitioner regularly watched her toddler-aged grandchildren during the period of alleged disability and also helped with animal care, such as brushing horses and riding a four-wheeler once to corral some cows. AR 29, 51-53; *see also* AR 1111 (reporting a sore back after watching her grandson the last four days).

The ALJ rationally concluded that this was a greater level of activity than one would expect of someone with the level of pain that Petitioner claimed to be experiencing. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (holding that an ALJ's adverse credibility determination was supported by substantial evidence where the claimant's daily activities included caring for her children's needs and leaving the house daily for appointments and shopping); *see also Burch v. Barnhart*, 400 F.3d 676, 680-681 (9th Cir. 2005) (where an ALJ's interpretation of a claimant's activities is rational, that decision must be upheld even if the evidence of the claimant's reported activities "may also admit of an interpretation more favorable" to the claimant).

Finally, the ALJ correctly noted that there is no connection in the record between Petitioner's neck, back, and shoulder pain and (i) her decision to stop working or (ii) her

**MEMORANDUM DECISION AND ORDER - 13**

amended disability onset date. These were relevant factors for the ALJ to consider. Specifically, Petitioner testified that she stopped working in 2019 (around the time of her original alleged disability onset date) not because of any medical issues, but because she moved from California to Idaho. AR 29, 56. Petitioner argues that this was irrelevant because she amended her alleged disability onset date at the disability hearing to October 13, 2021. Pt.'s Br. at 13 (Dkt. 15). The problem with this argument is that there is no evidence that Petitioner's pain was worsening during this period. As the ALJ noted, Petitioner reported improvement with treatment between 2019 and 2021, and there is no evidence of any "change in her condition" or "significant change in treatment" during this period that would justify finding that her pain was more limiting in 2021 than it was in 2019.[3] AR 29.

In summary, the ALJ provided a list of specific reasons, which taken together, constitute clear and convincing reasons for rejecting Petitioner's claims about the extent and limiting impact of her chronic pain. The Court will not replace this reasoned analysis with Petitioner's or its own, competing interpretation of the record. *See Tommasetti*, 533 F.3d at 1038 ("[i]f the ALJ's credibility finding is supported by substantial evidence, the court "may not engage in second-guessing").

II. The Statement of Petitioner's Daughter

Petitioner's second challenge on appeal is that the ALJ improperly rejected the lay statement of her daughter without providing germane reasons for doing so. Pt.'s Br. at 15-16 (Dkt. 15). The Ninth Circuit has not yet resolved whether an ALJ must provide germane reasons

---

[3] Indeed, Petitioner acknowledges that she amended her alleged disability onset date to place herself in the "approaching advanced age" category for the purposes of the medical-vocational grids, not because of any change related to her impairments. Pt.'s Br. at 14 (Dkt. 15).

MEMORANDUM DECISION AND ORDER - 14

before rejecting lay statements under the new regulations.[4]  *Apple v. Bisignano*, No. 24-307,
2025 WL 1525314, at *3 (9th Cir. May 29, 2025); Stephens v. Kijakazi, No. 22-25998, 2023
U.S. App. LEXIS 27936, 2023 WL 6937296, at *2 (9th Cir. Oct. 20, 2023); and *Fryer v.
Kijakazi*, No. 21-36004, 2022 U.S. App. LEXIS 35651, 2022 WL 17958630, at *3 n.1 (9th Cir.
Dec. 27, 2022).

       The Court need not take a position on this issue, however, because the ALJ's decision
satisfies the germane reasons standard.  The ALJ specifically discussed the statement of
Petitioner's daughter and found that it was "less than fully persuasive for the same reasons that
the claimant's own allegations do not fully persuade me."  This constitutes germane reasons
under Ninth Circuit law.  *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (as long as the
ALJ gives legally sufficient reasons for rejecting a petitioner's testimony, "the ALJ need only
point to those reasons when rejecting similar testimony by a [lay] witness") and *Valentine v.
Comm'r SSA*, 574 F.3d 685, 694 (9th Cir. 2009) (an ALJ who provides clear and convincing
reasons for rejecting a claimant's subjective complaints may legally reject parallel statements by
a lay witness for "the same reasons").  Petitioner's second challenge, consequently, fails.

### III.  Petitioner's Ability to Handle and Finger

       Petitioner's final challenge on appeal is that the ALJ's refusal to incorporate any
limitations into the RFC regarding Petitioner's ability to handle or finger was not supported by
substantial evidence.  Pt.'s Br. at 16-18 (Dkt. 15).  This argument is not persuasive.  Admittedly,
the ALJ's discussion of the evidence of Petitioner's claims about her hands could have been

---

[4] On March 7, 2025, the Ninth Circuit issued a published ruling, holding that its "'germane reasons'
precedent no longer applies to claims filed on or after March 27, 2017, and in considering such claims,
ALJs need not explain their reasons for discounting evidence from nonmedical sources, such as the
claimant's friends and family." *Hudnall v. Dudek*, 130 F.4th 668, 671 (9th Cir. 2025).  On April 7, 2025,
this opinion was vacated and withdrawn. *Hudnall v. Dudek*, No. 23-3727, 2025 WL 1024393, at *1 (9th
Cir. Apr. 7, 2025).

**MEMORANDUM DECISION AND ORDER - 15**

more robust.  As Petitioner points out, the ALJ did not specifically talk about Petitioner's fingers occasionally going to sleep or how that might impact her ability to work.  AR 21-34.  "Even when an [ALJ] explains [a] decision with less than ideal clarity," however, the court "must uphold it if the [ALJ's] path may reasonably be discerned."  *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012).

Here, the ALJ found that Petitioner did not demonstrate "weakness of the upper or lower extremities" and had no muscle atrophy or loss of sensation in these areas.  AR 28.  Based on this and other evidence, the ALJ credited the opinions of the state agency reviewers regarding Petitioner's physical limitations.  AR 30.  These reviewers found that Petitioner had no limitations in her ability to handle or finger.  AR 93, 103.  In other words, the ALJ accepted the opinions of the state agency medical experts about Petitioner's ability to handle and finger.  AR 30.  Petitioner has raised no challenge to the ALJ's crediting of this medical evidence, and the Court will not raise such a challenge on her behalf.  *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (issues which are not specifically and distinctly argued and raised in a party's opening brief are waived) and *Carmickle v. Comm'r of Social Sec. Admin*, 533 F.3d 1155, 1161 n. 2 (9th Cir. 2008) (refusing to address an ALJ's finding where the Petitioner "failed to argue [the] issue with any specificity in his briefing.").

Petitioner's final challenge, consequently, fails.  Absent a successful challenge to an ALJ's assessment of the medical opinion evidence, an ALJ's adoption of the state agency medical opinions constitutes substantial evidence to support the RFC.  *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1171 (9th 2008) (the RFC was supported by substantial evidence where it was consistent with the opinion of the state agency reviewing psychologist) *and Allen*, 749 F.2d

**MEMORANDUM DECISION AND ORDER - 16**

577, 579 (a medical opinion generally constitutes substantial evidence in support of an ALJ's findings).

## **ORDER**

Based on the foregoing, Petitioner's Petition for Review and the Brief in Support of Petition to Review (Dkts. 1 & 15) are **DENIED,** and the decision of the Commissioner is **AFFIRMED.**

DATED: August 22, 2025

Raymond E. Patricco
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 17**